## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA, FORT PIERCE DIVISION

### CASE NO. _____

RONALD MISSICK, II,

        Plaintiff,

vs.

WHITEMARSH RESERVE
HOMEOWNERS ASSOCIATION, INC.,
a Florida Not for Profit Company,

        Defendant.

Martin County Circuit Court
Case No.: 16-404-CA

-----------------------------------------------------------/

### NOTICE OF REMOVAL

Defendant, WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC., pursuant to 28 U.S.C. §§ 1331, 1441 and 1446 and Fed. R. Civ. Proc. Rule 81(c), hereby removes and gives notice of the removal of the above styled action from the Circuit Court of the Nineteenth Judicial Circuit in and for Martin County, Florida, to the United States District Court for the Southern District of Florida, Fort Pierce Division. As grounds in support of the removal, WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC. alleges as follows:

1. WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC. ("Whitemarsh") is a Defendant in the Case No. 16-404-CA, which is currently pending in the Nineteenth Judicial Circuit in and for Martin County.

2. On or about April 8, 2016, Plaintiff, RONALD MISSICK, II ("Plaintiff") filed a Complaint against Whitemarsh, seeking, *inter alia,* damages due to Whitemarsh's alleged violation of the Federal and Florida Fair Housing Acts.

3.  Whitemarsh desires to remove this action to a United States District Court which has original jurisdiction over the action in accordance with 28 U.S.C. § 1441(a). Plaintiff alleges violations of the Federal Housing Act which provides original jurisdiction over this civil action which arises under the laws of the United States. 28 U.S.C. §§ 1331.

4.  This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1331, 1441 and 1446.

5.  Pursuant to 28 U.S.C. § 1441(a) and Local Rule 3.1, the United States District Court for the Southern District of Florida, Fort Pierce Division, governs Martin County, the location of the state court in which the State Court Action was originally filed. Thus, Whitemarsh may properly remove the State Court Action to this Court.

6.  Consistent with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other state court filings, together with an on-line docket as to all state court filings, are attached hereto. Specifically,  Whitemarsh has attached copies of the:

   a.  Online Docket as of May 4, 2016, at approximately 10:00 a.m.

   b.  Civil Cover Sheet filed by Plaintiff in the State Court Action on or around April 8, 2016;

   c.  Verified Complaint filed by Plaintiff in the State Court Action on or around April 8, 2016;

   d.  Proposed Summons filed by Plaintiff in the State Court Action on or around April 8, 2016;

   e.  Civil Cover Sheet filed by Plaintiff in the State Court Action on or around April 8, 2016;

   f.  Summons issued to Whitemarsh filed by Plaintiff in the State Court Action dated on or around April 11, 2016;

    g.  Notice of Filing Affidavit of Service filed by Plaintiff in the State Court Action on or around April 20, 2016.

7.  Pursuant to 28 U.S.C. § 1446(d), Whitemarsh is providing a written notice of this removal to all parties in the State Court Action and is filing a copy of this Notice of Removal with the Clerk of the Nineteenth Judicial Circuit in and for Martin County, Florida.

WHEREFORE, Defendant, WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC., hereby removes the subject State Court Action to the United States District Court for the Southern District of Florida, Fort Pierce Division from the Circuit Court of the Nineteenth Judicial Circuit in and for Martin County, Florida.

Date: May 4, 2016                         Respectfully submitted,

*/s/ George W. Gift, III* _____
KNOTT EBELINI HART
*Attorneys for Defendant*
George W. Gift, III
Florida Bar No. 109093
1625 Hendry Street, Suite 301
Fort Myers, Florida  33901
Phone:  (239) 334-2722
Primary Email:  ggift@knott-law.com
Secondary       Email:ahaak@knott-law.com;
njayne@knott-law.com
Tertiary Email: kscott@knott-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May 2016, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notice of Electronic Filing generated by CM/ECF and/or otherwise.

Respectfully submitted,

*/s/ George W. Gift, III*
KNOTT EBELINI HART
*Attorneys for Defendant*
George W. Gift, III
Florida Bar No. 109093
1625 Hendry Street, Suite 301
Fort Myers, Florida  33901
Phone:  (239) 334-2722
Primary Email:  ggift@knott-law.com
Secondary      Email:ahaak@knott-law.com;
njayne@knott-law.com
Tertiary Email: kscott@knott-law.com

<u>**SERVICE LIST**</u>

<u>**Counsel for Plaintiff**</u>
Ryan S. Grazi, Esq.
Fla. Bar No. 577421
GRAZI & GIANINO, LLP
217 East Ocean Boulevard
Stuart, FL 34994
Tel. (772) 286-0200
Fax: (772) 286-4789
Primary E-mail: <u>rgrazi@gglawyers.com</u>
2nd E-mail: <u>lgrazi@gglawyers.com</u>
3rd E-mail: <u>anasuarez@gglawyers.com</u>



MARTIN CLERK

Search                                                                                    Logout

kscott

**Back**                                                              New Search   Expand All

| | |
|---|---|
| Case Number | 432016CA000404CAAXMX |
| | [16000404CAAXMX] |
| Filed Date | 04/08/2016 |
| County | MARTIN |
| Case Type | Circuit Civil 3-D |
| Status | Open |

| | |
|---|---|
| Party Name | MCMANUS, F SHIELDS |
| Party Type | JUDGE |
| Attorney | |
| Bar ID | |
| Party Name | MISSICK, RONALD |
| Party Type | PLAINTIFF |
| Attorney | GRAZI, RYAN SANFORD |
| Bar ID | 577421 |
| Party Name | WHITEMARSH RESERVE HOMEOWNERS |
| Party Type | DEFENDANT |
| Attorney | |
| Bar ID | |

### Dockets

Ima 

Document
#
7

Action
Date
04/20/201(

Description                    NOTICE OF FILING AFFIDAVIT OF SERVICE- SUMMONS
SERVED ON WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION- 4.16 .16 1:58PM:

Pag

4

Ima

Document
#
6

Action
Date
04/11/2016

Description SUMMONS ISSUED TO- WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION INC- ATTORNEY BOX 62:

Pag
2

Ima

Document
#
1

Action
Date
04/08/2016

Description Case 432016CA000404CAAXMX Filed with Clerk on 4/8/2016

Pag

Ima

Document
#
2

Action
Date
04/08/2016

Description CIVIL COVER SHEET :

Pag
2

Ima

Document
#
5

Action
Date
04/08/2016

Description CIVIL COVER SHEET :

Pag
3

Ima

Document
#
3

Action
Date
04/08/2016

Description                    VERIFIED COMPLAINT:

Pag
24

Ima

Document
#
4

Action
Date
04/08/2016

Description                    PROPOSED 20 DAY SUMMONS TO BE ISSUED AND PLACED
IN BOX $10 TO- WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION INC:

Pag
2

## Court Events

| Event Date | No records found. |
|------------|-------------------|

## Sentences

| Seq # | No records found. |
|-------|-------------------|

## Financial Summary

| Financial Summary | | |
|---|---|---|
| Assessment | Total: $410.00 | Paid to Date: $410.00 | Balance Due: $0.00 |
| Restitution | Total: $0.00 | Paid to Date: $0.00 | Balance Due: $0.00 |
| Last Payment Date: 04/11/2016 | | |

| Financial Details | |
|---|---|
| Count | - |
| Assessment Due | $410.00 |
| Assessment Paid to Date | $410.00 |
| Restitution Due | $0.00 |
| Restitution Paid to Date | $0.00 |
| Last Payment Date | 04/11/2016 |

Filing # 40035649 E-Filed 04/08/2016 01:14:30 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

| I. | **CASE STYLE** |
| --- | --- |

IN THE CIRCUIT COURT OF THE <u>NINETEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MARTIN</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Ronald Missick II</u>
Plaintiff
vs.
<u>Whitemarsh Reserve Homeowners Association Inc</u>
Defendant

| II. | **TYPE OF CASE** |
| --- | --- |

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability – commercial
    ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure $0 - $50,000
    ☐ Commercial foreclosure $50,001 - $249,999
    ☐ Commercial foreclosure $250,000 or more
    ☐ Homestead residential foreclosure $0 – 50,000
    ☐ Homestead residential foreclosure $50,001 - $249,999
    ☐ Homestead residential foreclosure $250,000 or more
    ☐ Non-homestead residential foreclosure $0 - $50,000
    ☐ Non-homestead residential foreclosure $50,001 - $249,999
    ☐ Non-homestead residential foreclosure $250,00 or more

☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
    ☐ Malpractice – business
    ☐ Malpractice – medical
    ☐ Malpractice – other professional
☒ Other
    ☐ Antitrust/Trade Regulation
    ☐ Business Transaction
    ☐ Circuit Civil - Not Applicable
    ☐ Constitutional challenge-statute or ordinance
    ☐ Constitutional challenge-proposed amendment
    ☐ Corporate Trusts
    ☒ Discrimination-employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III. **REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☐ Non-monetary
    ☐ Non-monetary declaratory or injunctive relief;
    ☒ Punitive

IV. **NUMBER OF CAUSES OF ACTION: (     )**
    (Specify)

    <u>2</u>

V. **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ Yes
    ☒ No

VI. **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ No
    ☐ Yes – If "yes" list all related cases by name, case number and court:

VII. **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ Yes
    ☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Ryan S Grazi</u>      FL Bar No.: <u>577421</u>
    Attorney or party                                                (Bar number, if attorney)

    <u>Ryan S Grazi</u>   <u>04/08/2016</u>
    (Type or print name)                            Date

Filing # 40035649 E-Filed 04/08/2016 01:14:30 PM

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

RONALD MISSICK, II,             CASE NO.:

       Plaintiff,               JUDGE:

vs.

WHITEMARSH RESERVE
HOMEOWNERS ASSOCIATION, INC.,
a Florida Not for Profit Company.

       Defendant.

_____/

## VERIFIED COMPLAINT

COMES NOW, the Plaintiff, RONALD MISSICK, II, (hereinafter referred to as

"MISSICK"), by and through undersigned counsel, and brings this action against the

Defendant, WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC., a

Florida Not for Profit Company (hereinafter referred to as "WHITEMARSH"), for

violations of the Federal and Florida Fair Housing Act, and as grounds therefore states as

follows:

## GENERAL ALLEGATIONS

1. This is an action for damages exceeding $15,000, including a claim for

compensatory damages, punitive damages, attorney fees, and costs of prosecution.

2. Plaintiff MISSICK is a resident of Martin County Florida.

3. Defendant WHITEMARSH is charged with the governing of WHITEMARSH

RESERVE HOMEOWNERS ASSOCIATION, INC., including the approval of

prospective purchasers or tenants in the community, and its principal place of business is in

Martin County.

Electronically Filed Martin Case # 16000404CAAXMX 04/08/2016 01:14:30 PM

1

4. Venue is appropriate in Martin County, as all actions or inactions giving rise to this claim arose in Martin County.

5. All conditions precedent to bringing this action have occurred or have been waived.

6. At all times material hereto, WHITEMARSH acted with malice or reckless disregard for MISSICK'S state protected rights.

7. On or about February 12, 2016, MISSICK entered into a contract to purchase the real property owned by Maria Saroka, located within the WHITEMARSH Association. A copy of the contract is attached hereto as "Exhibit A."

8. At all material times, MISSICK was a well-qualified purchaser of the property located at 205 SW Walking Path, Stuart, FL 34997, within the WHITEMARSH Association.   Further, MISSICK is of African American descent and is otherwise a member of a protected class pursuant to the Federal and Fair Housing Act.

9. The Seller, Maria Saroka (hereinafter referred to as "Saroka") followed all appropriate procedures to allow WHITEMARSH to approve the sale of her property.

10. As part of the application process, MISSICK was required to fill out an application to be approved by WHITEMARSH.

11. As part of the application process, MISSICK was forced to undergo a background investigation, therefore, his race, sex, date of birth, and social security number were required to be disclosed on the form.

12. The application was filled out on March 11, 2016, and both MISSICK and Saroka advised WHITEMARSH that the anticipated closing date was March 30, 2016.

13. MISSICK paid an extra fee to have the approval process expedited.

14. On the date of closing, knowing that the approval was necessary to proceed forward with the closing, Saroka and MISSICK signed all necessary closing documents and placed all necessary funds into escrow with the title company performing the closing.

15. On March 29, 2016, a day prior to the closing, WHITEMARSH sent a letter rejecting the application allegedly based on a review of "Criminal History." See "Exhibit B" attached hereto.

16. MISSICK has retained the undersigned firm and has agreed and obligated himself to pay it a reasonable fee for its services, and he is entitled to recover the same from WHITEMARSH pursuant to applicable Florida law.

## COUNT I - VIOLATION OF FEDERAL AND FLORIDA FAIR HOUSING ACT RACIAL DISCRIMINATION

17. MISSICK re-affirms and re-alleges paragraphs 1-16 as if more fully stated herein.

18. MISSICK has one misdemeanor conviction for simple battery from February 2000, and a reckless driving charge from 1998, more than 16 years prior to the application.

19. A review of state public records shows that WHITEMARSH has allowed no less than nine purchasers to purchase property in WHITEMARSH with prior criminal records.

20. Upon information and belief, the only difference between MISSICK'S application and the nine other applications, wherein the prospective purchaser had a criminal record, is the fact that MISSICK marked "BLK" after the section where it asked for race in the application, clearly indicating that MISSICK was "black" or African American.

21. MISSICK has been a victim of discrimination based on his race.

3

22.    WHITEMARSH having waived any potential rejection of a purchaser based on a claim of criminal charges, only leaves the applicant's race as its basis for rejecting the application.

23.    Pursuant to Fla. Stat. § 760.23(a) and 42 U.S.C.A. § 3604(a), "It is unlawful to refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, or otherwise to make unavailable, or deny a dwelling to any person because of race, color, national origin, sex, handicap, familial status, or religion." The Federal and Florida Statute sections are identical.

24.    MISSICK, a member of a protected class applied to WHITEMARSH for the approval of the purchase of a dwelling, and WHITEMARSH rejected MISSICK because of his criminal history even though WHITEMARSH has approved and thus allowed housing to similarly-situated applicants not of MISSICK'S protected class, but with a comparable criminal record.

25.    WHITEMARSH'S actions violate the mandates of both the Federal and Florida Fair Housing Act; and as a result, MISSICK has suffered damages, including, but not limited to, mental anguish and loss of dignity. Further, pursuant to Fla. Stat. § 760.11, MISSICK is entitled to recover punitive damages from WHITEMARSH, and the provisions of § 768.72 and § 768.73 do not apply.

WHEREFORE, the Plaintiff, RONALD MISSICK, II, requests this Court find that the Defendant, WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC., has violated the Florida Fair Housing Act; enter an award in favor of Plaintiff, finding him entitled to recover compensatory and punitive damages; further find that he is entitled to

recover his attorney's fees and costs incurred in this action; and grant such other and further relief as this Court deems just and proper.

## COUNT II - VIOLATION OF FEDERAL AND FLORIDA FAIR HOUSING ACT IMPERMISIBLE POLICY/DISPARATE IMPACT

26. MISSICK re-affirms and re-alleges paragraphs 1-16 and 18-25 as if more fully stated herein.

27. This count is plead in the alternative, as WHITEMARSH'S apparent policy to disapprove any prospective purchaser with a "Criminal History" will have a disparate-impact and is, therefore, in violation of the Federal and Florida Fair Housing Act.

28.   WHITEMARSH in its application denial letter states that the application was disapproved by the Association due to "Criminal History".

29.   WHITEMARSH is apparently attempting to enforce a blanket ban policy that requires it to deny applications to purchase to any prospective purchaser that has a "Criminal History".   This policy or practice of excluding persons with prior convictions does not serve any substantial, legitimate, non-discriminatory interest.

30.   WHITEMARSH has no valid interest in enforcing such a blanket ban policy, and the enforcement of such a policy leads to the disparate rejection of minority purchasers.

31.   This blanket prohibition imposed by WHITEMARSH on "any person with a conviction record – no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then" violates the Fair Housing Act.

32. "Nationally, racial and ethnic minorities face disproportionately high rates of arrest and incarceration. For example, in 2013, African Americans were arrested at a rate more than double their proportion of the general population.   Moreover, in 2014, African

Americans comprised approximately 36 percent of the total prison population.   In other words, African Americans were incarcerated at a rate nearly three times their proportion of the general population." See Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions (April 4, 2016).

33.   The consideration of any prior arrests with no conviction is likewise a violation of The Fair Housing Act.   "A housing provider with a policy or practice of excluding individuals because of one or more prior arrests (without any conviction) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest."   See Guidance for Public Housing Agencies (PHAs) and Owners of Federally-Assisted Housing on Excluding the Use of Arrest Records in Housing Decisions, HUD PIH Notice 2015-19 (November 2, 2015).

34.   WHITEMARSH'S disparate treatment of MISSICK due to "Criminal History" is a violation of The Fair Housing Act.

35.   As a result of WHITEMARSH'S policy, MISSICK, a minority purchaser, has been wrongfully denied the ability to purchase real property and acquire a dwelling.   This denial has caused MISSICK to suffer damages, including, but not limited to, mental anguish and loss of dignity. Further, pursuant to Fla. Stat. § 760.11, MISSICK is entitled to recover punitive damages from WHITEMARSH, and the provisions of § 768.72 and § 768.73 do not apply.

**DEMAND FOR JURY TRIAL**

The Plaintiff, RONALD MISSICK, II, demands a trial by jury for all such issues triable.

6

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

DATED this ___ day of April, 2016.


_____
RONALD MISSICK, II

STATE OF FLORIDA   )
                : ss.
COUNTY OF MARTIN)

BEFORE ME, the undersigned authority, on this day personally appeared RONALD MISSICK, II, who first being duly sworn, deposes and says that he executed the foregoing instrument and who [ ✓ ] is personally known to me or [＿＿] has produced _____ as identification.

WITNESS my hand and official seal on this ___ day of April, 2016.



KELLY A DEMARIA
MY COMMISSION # FF942594
EXPIRES December 13, 2019
(407) 398-0153   FloridaNotaryService.com

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES:

DATED:   April ___, 2016.


GRAZI & GIANINO, LLP
217 East Ocean Boulevard
Stuart, FL 34994
Tel. (772) 286-0200
Fax: (772) 286-4789


_____
RYAN S. GRAZI, ESQ.
Fla. Bar No. 577421
Primary E-Mail:   rgrazi@gglawyers.com
2nd E-mail:   lgrazi@gglawyers.com
3rd E-mail:   anasuarez@gglawyers.com

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E





## "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

1* **PARTIES:** _____ MARIA SOROKA _____ ("Seller"),
2* and _____ RONALD MISSICK II _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And
5  Purchase and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: _____ 250 SW WALKIN PATH, Stuart, FL 34997 _____
8*   (b) Property is located in: __Martin__ County, Florida. Real Property Tax ID No.: __41-38-41-006-000-00410-0__
9*   (c) Real Property: The legal description is LOT 41 PH 1 WHITEMARSH RESERVE PUD
10  _____
11  _____
12   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14   by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16    which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17    purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18    drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security
19    gate and other access devices, and storm shutters/panels ("Personal Property").
20*   Other Personal Property items included in this purchase are: Washer/Dryer
21  _____
22   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23* (e) The following items are excluded from the purchase: _____
24  _____

25  **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE (U.S. currency):**..........................................................................$   237,000.00
27*   (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) .......$   2,000.00
28    The initial deposit made payable and delivered to "Escrow Agent" named below
29*    (CHECK ONE): (i) ☐ accompanies offer or (ii) ✕ is to be made within ___3___ (if left
30    blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31    OPTION (ii) SHALL BE DEEMED SELECTED.
32*    Escrow Agent Information: Name: _____
33*    Address: _____
34*    Phone: _____ E-mail: _____ Fax: _____
35*   (b) Additional deposit to be delivered to Escrow Agent within ___10___ (if left blank, then 10)
36*    days after Effective Date ..............................................................................................$   3,000.00
37    (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........   189,600.00
39*   (d) Other: _____$   0.00
40   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*    transfer or other COLLECTED funds ...........................................................................$   42,400
42    NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*    _____ February 13, 2016 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned
46    to Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the
47    day the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49    initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51   and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*   ("Closing") on _____ March 31, 2016 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials KMU    Page 1 of 12    Seller's Initials MS

FloridaRealtors/FloridaBar-ASIS-4   Rev.9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 060529-300145-6306783                                                       formsimplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

**5. EXTENSION OF CLOSING DATE:**

    (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

    (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**6. OCCUPANCY AND POSSESSION:**

    (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

    (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

<strong>FINANCING</strong>

**8. FINANCING:**

    ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

    ☒ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 45) days after Effective Date ("Loan Commitment Date") for (CHECK ONE): ☒ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract **up to the earlier of:**

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

107     (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected
108     to waive the financing contingency of this Contract; or
109     (ii.) 7 days prior to the Closing Date specified in Paragraph 4, which date, for purposes of this Paragraph
110     8(b) (ii), shall not be modified by Paragraph 5(a).
111 If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms
112 of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
113 obligations under this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8,
114 then this financing contingency shall be deemed waived by Buyer.

115 If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter
116 close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related
117 conditions of the Loan Commitment have not been met (except when such conditions are waived by other
118 provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms
119 of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s)
120 the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this
121 Contract.
122* ☐ (c) Assumption of existing mortgage (see rider for terms).
123* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

124 **CLOSING COSTS, FEES AND CHARGES**

125 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
126 (a) **COSTS TO BE PAID BY SELLER:**
127 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
128 • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)    • Recording and other fees needed to cure title
129 • Title search charges (if Paragraph 9(c) (iii) is checked)    • Seller's attorneys' fees
130* • Municipal lien search (if Paragraph 9(c) (iii) is checked)    • Other:_____
131     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
132     a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
133     Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall
134     pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
135 (b) **COSTS TO BE PAID BY BUYER:**
136 • Taxes and recording fees on notes and mortgages    • Loan expenses
137 • Recording fees for deed and financing statements    • Appraisal fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Buyer's Inspections
139 • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
140 • Lender's title policy and endorsements    • All property related insurance
141 • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
142 • Municipal lien search (if Paragraph 9(c) (ii) is checked)     9 (c) (iii) is checked.)
143* • Other:_____
144* (c) **TITLE EVIDENCE AND INSURANCE: At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
145 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a
146 Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
147 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
148 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
149 a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title
150 policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as
151 set forth below. The title insurance premium charges for the owner's policy and any lender's policy will be
152 calculated and allocated in accordance with Florida law, but may be reported differently on certain federally
153 mandated closing disclosures and other closing documents.
154 **(CHECK ONE):**
155* X (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
156 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
157 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
158 provider(s) as Buyer may select; or
159* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
160 services related to Buyer's lender's policy, endorsements and loan closing; or
161* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's
162 policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title

formsimplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E



163 evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search;
164 and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for
165 Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more
166* than $ _____ (if left blank, then $200.00) for abstract continuation or title search ordered or
167 performed by Closing Agent.
168 (d) SURVEY: On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
169 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
170 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
171* (e) HOME WARRANTY: At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
172* _____ at a cost not to exceed $_____. A home
173 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
174 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
175 (f) SPECIAL ASSESSMENTS: At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
176 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
177 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
178 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
179 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
180 be paid in installments (CHECK ONE):
181* ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
182 Installments prepaid or due for the year of Closing shall be prorated.
183* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
184 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
185 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
186 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

**DISCLOSURES**

187

188 **10. DISCLOSURES:**
189 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
190 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
191 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
192 radon and radon testing may be obtained from your county health department.
193 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure,
194 Seller does not know of any improvements made to the Property which were made without required permits
195 or made pursuant to permits which have not been properly closed.
196 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned
197 or desires additional information regarding mold, Buyer should contact an appropriate professional.
198 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
199 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
200 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
201 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish
202 and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s)
203 and /or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance
204 coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C.
205 §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank,
206* then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
207 Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of
208 buildings and flood zone designation of Property. The National Flood Insurance Program may assess
209 additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
210 (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an
211 elevation certificate may be required for actuarial rating.
212 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information
213 Brochure required by Section 553.996, F.S.
214 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
215 mandatory.
216 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
217 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
218 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

Buyer's Initials _KMI_ _____   Page 4 of 12 :   Seller's Initials _MS_ _____

FloridaRealtors/FloridaBar-ASIS-4   Rev.9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 060820-600145-5306765

*formsimplicity*

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___10___ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

FloridaRealtors/FloridaBar-ASIS-4   Rev.9/15 © 2016 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 060828-600145-5306783

formsimplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

271   (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
272     cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
273     to Buyer.

274 **ESCROW AGENT AND BROKER**

275 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
276     and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
277     within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
278     of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
279     demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent
280     may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties
281     or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow
282     until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall
283     determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction
284     of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such
285     action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate,
286     except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate
287     broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve
288     escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

289     Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
290     or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
291     attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent.
292     Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is
293     due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing
294     or termination of this Contract.

295 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
296     square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
297     professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
298     and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
299     Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
300     public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
301     GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND
302     FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,
303     WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
304     individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
305     employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees
306     at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection
307     with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
308     information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
309     failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
310     beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
311     recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services
312     provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such
313     vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors
314     and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not
315     relieve Broker of statutory obligations under Chapter 475, F.S., as amended. **For purposes of this Paragraph 14,
316     Broker will be treated as a party to this Contract. This Paragraph 14 shall survive** Closing or termination of this
317     Contract.

318 **DEFAULT AND DISPUTE RESOLUTION**

319 **15. DEFAULT:**
320   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
321     including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
322     Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
323     Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
324     obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
325     to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon

Buyer's Initials [KMI]         Page 6 of 12          Seller's Initials [MS]

FloridaRealtors/FloridaBar-ASIS-4   Rev.9/15 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 060829-500145-5305786

*formsimplicity*

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

326 default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
327 Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to
328 pay to Cooperating Broker.
329 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
330 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
331 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
332 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
333 performance.
334 This Paragraph 15 shall survive Closing or termination of this Contract.
335 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
336 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
337 settled as follows:
338 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
339 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
340 16(b).
341 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
342 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
343 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
344 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
345 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
346 16 shall survive Closing or termination of this Contract.
347 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
348 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
349 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
350 recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
351 the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

352 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

353 **18. STANDARDS:**
354 **A. TITLE:**
355 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
356 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto,
357 shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by
358 Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title
359 insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the
360 Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land
361 use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters
362 appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of
363 record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property
364 lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes
365 for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if
366 additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.**
367 If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title
368 defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The
369 Florida Bar and in accordance with law.
370 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
371 Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and
372 it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
373 date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
374 after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify
375 Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller
376 will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties
377 will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of
378 Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after
379 expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to
380 exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects
381 ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing

Buyer's Initials ___ *RM* ___      Page 7 of 12      Seller's Initials *MS* ___
FloridaRealtors/FloridaBar-ASIS-4   Rev.9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 050826-600145-5305765

formsimplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

382    Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's
383    receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby
384    releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller
385    is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer
386    shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this
387    Contract.
388    **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
389    encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
390    governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
391    such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
392    than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
393    Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
394    prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
395    preparation of such prior survey, to the extent the affirmations therein are true and correct.
396    **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
397    the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of
398    access.
399    **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
400    tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
401    deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
402    the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
403    and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
404    Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to
405    Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice
406    to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating
407    this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations
408    under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's
409    obligations thereunder.
410    **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
411    statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
412    repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
413    improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
414    general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
415    names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all
416    charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages
417    have been paid or will be paid at Closing.
418    **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.**
419    Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or
420    dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or
421    occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the
422    Property is located) of the next business day.
423    **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
424    liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused
425    or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God,
426    unusual transportation delays, wars, insurrections, and acts of terrorism, and which, by exercise of reasonable diligent
427    effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
428    Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract,
429    provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14
430    days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
431    and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under
432    this Contract.
433    **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
434    personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
435    described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
436    transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in
437    this Contract.
438    **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

439   (i) **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the
440   attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title
441   insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
442   (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
443   sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit
444   (s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
445   receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable
446   the survey, flood elevation certification, and documents required by Buyer's lender.
447   (iii) **PROCEDURE:** The deed shall be recorded upon COLLECTION of all closing funds. If the Title Commitment
448   provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
449   procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
450   **closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
451   **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
452   for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
453   escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
454   for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault
455   of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days
456   from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit
457   and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
458   simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
459   convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely
460   demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening
461   defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
462   **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as
463   of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
464   (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
465   and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if
466   assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may
467   be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will
468   be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated
469   based on current year's tax with due allowance made for maximum allowable discount, homestead and other
470   exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is
471   available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
472   assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
473   on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
474   of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
475   agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
476   informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at
477   either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive
478   Closing.
479   **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
480   shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
481   including a walk-through (or follow-up walk-through if necessary) prior to Closing.
482   **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
483   ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does
484   not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
485   pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
486   cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
487   restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
488   Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
489   Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
490   Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
491   with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
492   **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
493   Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall
494   cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided,

formsimplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

465 however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be
466 contingent upon, nor extended or delayed by, such Exchange.
467 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
468 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
469 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest.
470 Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery
501 given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be
502 as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal
503 delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and
504 any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use
505 of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.
506 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
507 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
508 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or
509 change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties
510 intended to be bound by it.
511 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
512 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
513 rights.
514 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
515 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
516 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED"** means any checks tendered or
517 received, including Deposits, have become actually and finally collected and deposited in the account of
518 Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents
519 may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's
520 accounts.
521 **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
522 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a
523 pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract.
524 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
525 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
526 county where the Real Property is located.
527 **V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a
528 "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real
529 property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the
530 Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained
531 a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and
532 potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if
533 an "exemption" is claimed on the sale of residential property for $300,000 or less.
534 (i) No withholding is required under Section 1445 if the Seller is not a "foreign person," provided Buyer accepts
535 proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller,
536 signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S.
537 taxpayer identification number and home address (or office address, in the case of an entity), as provided for in
538 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and
539 timely remit said funds to the IRS.
540 (ii) If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated
541 withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced
542 sum, if any required, and timely remit said funds to the IRS.
543 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and
544 has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
545 received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer
546 and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at
547 Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be
548 subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to
549 the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
550 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
551 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the

Buyer's Initials ___KMI___   Page 10 of 12   Seller's Initials ___MG___

FloridaRealtors/FloridaBar-ASIS-4   Rev.9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 080829-600145-5306785

formsimplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

652 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
653 disbursement in accordance with the final determination of the IRS, as applicable.
654 (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
655 8288 and 8288-A, as filed.
656 **W.  RESERVED**
657 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
658 *and against any real estate licensee involved in the negotiation of this Contract for any damage or*
659 *defects pertaining to the physical condition of the Property that may exist at Closing of this Contract and*
660 *be subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer.*
661 *This provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall*
662 *survive Closing.*
663 ADDENDA AND ADDITIONAL TERMS

664* **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into
665 this Contract (Check if applicable):

| | | |
|---|---|---|
| ☒ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☒ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☒ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control Line | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing | ☐ O. Insulation Disclosure | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ Q. Housing for Older Persons | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners'/Flood In | ☐ R. Rezoning | ☐ AA. Licensee Property Interest |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ BB. Binding Arbitration |

566* **20.  ADDITIONAL TERMS:**

583 **COUNTER-OFFER/REJECTION**

584* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
585 deliver a copy of the acceptance to Seller).
586* ☐ Seller rejects Buyer's offer.

587 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
588 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

589 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

590 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
591 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*

Buyer's Initials _KMI_    Page 11 of 12    Seller's Initials _MS_
FloridaRealtors/FloridaBar-ASIS-4    Rev.9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

592  should be negotiated based upon the respective interests, objectives and bargaining positions of all interested
593  persons.

594  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
595  BE COMPLETED.

596
597*  Buyer: _Ronald Missick II_____ Date: _2/12/2016___
598              —78CC022EB17144A...
599*  Buyer: _____ Date: _____
600
601*  Seller: _Marie Soroka_____ Date: _2-13-16___
602
603*  Seller: _____ Date: _____
604
605  Buyer's address for purposes of notice          Seller's address for purposes of notice
606*  _P. O. BOX 952_____          _____
607*  _HOBE SOUND, FL 33475_____          _____
608*  _____          _____

609  BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
610  to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
611  to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the
612  parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the
613  escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing
614  Broker to Cooperating Brokers.

615*  _____Matt Harrington_____          _____Helen Golisch_____
616  Cooperating Sales Associate, if any          Listing Sales Associate

617*  _____HW Real Estate, Inc_____          _____Lang Realty_____
618  Cooperating Broker, if any          Listing Broker

UNOFFICIAL DOCUMENT

Buyer's Initials _RMI_____          Page 12 of 12          Seller's Initials _MS___
FloridaRealtors/FloridaBar-ASIS-4   Rev.8/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 050829-500145-3398785

forms simplicity

DocuSign Envelope ID: 1181273C-004B-4BEC-9236-8233B267BA1E

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**♦♦♦ FloridaRealtors®**

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between_____MARIA SOROKA_____ (SELLER)
and_____RONALD MISSICK II_____ (BUYER)
concerning the Property described as 250 SW WALKING PATH, Stuart, FL 34997

**Buyer's Initials**   ⌐DS RMI    **Seller's Initials** _____

### M. DEFECTIVE DRYWALL

During the time Florida was experiencing building material shortages, some homes were built or renovated using drywall
imported from or manufactured in China or elsewhere which reportedly emit levels of sulfur, methane and/or other volatile
organic compounds that cause corrosion of air conditioner and refrigerator coils, copper tubing, electrical wiring, computer
wiring and other household items as well as create noxious odors which may also pose health risks ("Defective Drywall").

1. **Seller's Knowledge:** Except as indicated below, Seller has no actual knowledge of the presence of Defective Drywall
   or the existence of any information, records, reports, or other documents pertaining to Defective Drywall affecting the
   Property: (describe all known Defective Drywall information and list all available documents pertaining to Defective
   Drywall and provide documents, if any, to Buyer before accepting Buyer's offer) _____

   _____

   _____

2. **Defective Drywall Inspection: (Check One):**
   (a) ☐ Buyer waives the opportunity to conduct a risk assessment or inspection for the presence of Defective Drywall
       and accepts the Drywall in the Property in its existing condition.
   (b) ☒ Buyer, at Buyer's expense, may have a home inspector, licensed contractor or other licensed professional (if
       required by law) to conduct an inspection or risk assessment of the Property for the presence of Defective Drywall
       within ___10___ (if left blank, then 15) days from the Effective Date ("Drywall Inspection Period"). If the drywall
       inspection or risk assessment reveals the presence of Defective Drywall or reveals damage to the Property
       resulting from the Defective Drywall and the cost to remove/replace the Defective Drywall or damage resulting
       from the Defective Drywall exceeds $ 500.00_____ (if left blank, $500.00), Buyer may cancel this Contract
       by giving written notice to Seller on or before expiration of the Drywall Inspection Period. If Buyer timely
       terminates this Contract, the Deposit shall be refunded to Buyer; thereby releasing Buyer and Seller of all further
       obligations under this Contract, except as provided in Paragraph 3 below. If Buyer fails to timely cancel or fails to
       conduct the inspections permitted in this Paragraph, Buyer may not terminate this Contract pursuant to this
       Addendum.
   **IF NEITHER BOX IS CHECKED, THEN OPTION (b) SHALL BE DEEMED SELECTED.**

3. **Repair of Inspection Damages to Property:** Buyer shall be responsible for prompt payment for such inspections
   and repair all damages to the Property resulting from the inspections.

4. **Professional Advice:** Buyer acknowledges that Broker has not conducted any independent investigations to verify
   the accuracy or completeness of any representations about Defective Drywall made by Broker or Seller. Buyer agrees
   to rely solely on Seller, professional inspectors, governmental agencies or any third parties retained by the Buyer
   regarding any issue related to Defective Drywall.

CR-4  Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 031805-500146-5214117

*formsimplicity*

# Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR


LANG REALTY

**When initialed by all parties,** the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between

_____**Maria Soroka**_____ (SELLER)
and _____ (BUYER)
concerning the Property described as _LOT 41 PH 1 WHITEMARSH RESERVE PUD (PB 16 PG5)_

**Buyer's Initials** _____ _____     **Seller's Initials** _MS_ _____

### B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

Disclosure Summary For _____ _Whitemarsh Reserve_ _____
(Name of Community)

(a) AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
(b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
(c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ _148_ PER _MONTH_. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ _____ PER _____.
(d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
(e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
(f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $ _____ PER _____.
(g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
(h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
(I) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

_____     _____
DATE                                BUYER

_____     _____
DATE                                BUYER

**Page 1 of 1   B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE**
CR-4 Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.

flexmls Web                                                                                      Page 2 of 2

**Residential Full Report**                    250 SW Walking Path, Stuart, FL 34997                    List Price: $245,500

| | | |
|---|---|---|
| | MLS#: RX-10176630 | St: Active | Type: Townhouse |
| | Orig LP: $250,500 | Range Price: | List Price/SqFt: 110.38 |
| | Area: 7 - Stuart - South of Indian St | Geo Area: MA07 | County: Martin |
| | Legal Desc: LOT 41 PH 1 WHITEMARSH RESERVE PUD (PB 16 PG 5) | | |

Subdivision: WHITEMARSH RESERVE PUD PH 1
Development Name: Whitemarsh Reserve

| Model Name: | Bradford | Parcel ID: | 413841006000004100 | Front Exp: | E |
|---|---|---|---|---|---|
| Waterfront: | No | Waterfrontage: | | Garage Spaces: | 2 |
| | | Multiple Ofrs Acptd: | | Carport Spaces: | |
| Lot SqFt: | 4,530 | Taxes: | 2,731.79 | Private Pool: | No |
| HOPA: | No Hopa | Tax Year: | 2014 | REO: | No |
| Zoning: | RESIDENTIAL | Special Assessment: | No | Short Sale Addendum: | No |
| | | Dock: | | Short Sale: | No |
| | | Membership Equity: | No | | |

**Virtual Tour:**

| Living Room | 17 X 13 | Loft | 16 X 13 | Master Bedroom | 19 X 14 | LivSqFt: 2,224 | Bedrooms: 3 |
|---|---|---|---|---|---|---|---|
| Kitchen | 18 X 12 | | | Bedroom 2 | 12 X 11 | SqFt - Total: 2,775 | Baths - Full: 2 |
| | | | | Bedroom 3 | 12 X 11 | SqFt Source: Tax Rolls | Baths - Half: 1 |
| | | | | | | Guest Hse: | Baths - Total: 2.1 |
| | | | | | | Yr Built: 2008 | Pets Allowed: Restricted |

| HOA/POA/COA (Monthly): 142 | Bldg #: | Land Lease: | Mobile Home Size: |
|---|---|---|---|
| Governing Bodies: HOA | Total Floors/Stories: 2 | Recreation Lease: | Decal #: |
| Homeowners Assoc: Mandatory | Total Units in Bldg: | Min Days to Lease: | Serial #: |
| Lease Times p/Year: 2 | Unit Floor #: | | Brand Name: |
| Application Fee: 100 | Mbrshp Equity Amount: | | Total Assessed Value: |

Auction: No
Directions: I95 east on Kanner Highway past Pomeroy to entrance Whitemarsh Reserve on left.

Showing Instructions: Call Listing Office; Vacant

| LO: 608352 | Lang Realty/PBG | 561-209-7900 | | |
|---|---|---|---|---|
| LM: 33076196 | Helen Golisch | 561-371-7433 | helengolisch@aol.com | |
| Com/BuyerAgt: 3% | Comm/Non-Rep: 3% | Trans Brk: 3% | Bonus: No | LD: 10/16/2015 |
| Var/Dual Rate: No | List Type: Ex Rt | List Off Agency: Single Agency | XD: 04/30/2016 | |

Owner Name: Withheld
Broker Only Remarks: Please call listing office (561)209.7900 for showing instructions.
Any Broker Advertise: No
Agent Information: Agent Email: helengolisch@aol.com

| | |
|---|---|
| **Design:** Townhouse | **View:** Garden |
| **Construction:** CBS | **Waterfront:** None |
| **Unit Desc:** Multi-Level | **Cooling:** Central |
| **Flooring:** Carpet; Ceramic Tile | **Heating:** Central |
| **Furnished:** Unfurnished | **Security:** Gate - Unmanned |
| **Dining Area:** Dining-Living; Snack Bar | **Utilities:** 3-Phase Electric; Cable; Public Sewer; Public Water |
| **Master Bedroom/Bath:** Dual Sinks; Mstr Bdrm - Upstairs; Separate Shower | **Special Info:** Sold As-Is |
| **Window Treatments:** Verticals | **Terms Considered:** Cash; Conventional |
| **Lot Description:** < 1/4 Acre | **Parking:** 2+ Spaces; Garage - Attached |
| **Restrict:** Interview Required; Lease OK w/Restrict; Up to 2 Pets; 50+ lb Pet | **Lease Info:** Lease Times p/Year: 2 |
| **Rooms:** Laundry-Inside | **Roof:** Barrel |
| | **Taxes:** County Only |
| | **Equestrian Features:** |

Equip/Appl: Auto Garage Open; Dishwasher; Disposal; Dryer; Microwave; Range - Electric; Refrigerator; Storm Shutters; Water Heater - Elec
SubdivInfo: Bike - Jog; Pool; Sidewalks; Street Lights
Interior: Entry Lvl Lvng Area; Split Bedroom; Upstairs Living Area
Exterior: Covered Patio
Maintenance Fee Incl: Cable; Lawn Care; Maintenance-Exterior; Pest Control; Recrtnal Facility
Original List Price: $250,500

| Days On Market: 107 | | Cumulative DOM: 107 | |
|---|---|---|---|
| Sold Price: | Sold Price Sqft: | | Under Contract Date: |
| Selling Office: | Terms of Sale: | | Sold Date: |
| Selling Agent: ; | | | |

Public Remarks: Whitemarsh Reserve, Stuart. This immaculate, end unit townhouse features an extra large garden facing the preserve - plenty of room to roam, relax or entertain. Spacious living, dining, kitchen and laundry room downstairs and 3 beds, 2.5 baths plus a large loft upstairs to work or play! The home has an attached 2 car garage. This gated community boasts a heated pool, hot tub, playground and basketball courts. Convenient to I95, Turnpike, US1, downtown Stuart and local beaches.

Information is deemed to be reliable, but is not guaranteed. © 2016 MLS and FBS. Prepared by Helen Golisch on Sunday, January 31, 2016 12:13 PM. The information on this sheet has been made available by the MLS and may not be the listing of the provider.



March 29, 2016

Ron Missick II and Chelsea Whaley
42 Sedona Cir # 203
Stuart, FL 34994

*Certified Mail RRR and*
*Regular U. S. Mail*

**NOTICE OF PURCHASE APPLICATION DENIAL AND ADVERSE ACTION TAKEN**

RE:  Application for Purchase of Property – 205 SW Walking Path, Stuart, FL 34997

Dear Mr. Missick and Ms. Whaley:

I am contacting you regarding the purchase application you submitted on March 16, 2016 for the property located at 205 SW Walking Path, Stuart, FL 34997.  I regret to inform you that the application has been disapproved by the Association for the following reason(s):

**Sale Applicant(s)**

☐  Application and/or required documents or deposits were not received timely.

☐  Applicant(s) did not meet minimum credit score requirement or no credit score was available.

☒  Applicant was denied due to information obtained through a consumer report and/or background check.

☒  Other Grounds: CRIMINAL HISTORY

Sincerely,

/s/ Jacob Ensor

Attorney for Whitemarsh Reserve Homeowner's Association, Inc.

## CONSUMER REPORT DISCLOSURE

☒    If this box is checked, the decision to take adverse action was based in whole or in part on the information contained in a consumer report.  This report was supplied by:

**Fidelity Data Service**
**537 U.S. Highway One, Suite 6, North Palm Beach, FL 33408**
**(561) 845-6868**
**info@fedlitydataservice.com**

Fidelity Data Service did not make the decision to take this adverse action and is unable to provide the specific reasons why the adverse action was taken.  You have a right to obtain a free copy of a report by making a written request on Fidelity Data Service within 60 days of your receipt of this letter.  You also have a right to dispute with Fidelity Data Servcie the accuracy or completeness of any consumer report furnished by them.

Filing # 40035649 E-Filed 04/08/2016 01:14:30 PM

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

RONALD MISSICK, II,                          CASE NO.:

        Plaintiff,                          JUDGE:

vs.

WHITEMARSH RESERVE
HOMEOWNERS ASSOCIATION, INC.,
a Florida Not for Profit Company.

        Defendant.

_____/

### SUMMONS

**STATE OF FLORIDA:**
**TO EACH SHERIFF OF THE STATE:**

     **YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint or Petition in this action on the Defendant:

        **WHITEMARSH RESERVE HOMEOWNERS**
        **ASSOCIATION, INC.**
        **c/o Registered Agent, Ross, Earle & Bonan**
        **789 South Federal Highway, Suite 101**
        **Stuart, FL 34994**

     Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, whose name and address is:

        Ryan S. Grazi, Esq.
        GRAZI & GIANINO, LLP
        Post Office Drawer 2846
        Stuart, Florida 34995

within twenty (20) days after service of this Summons on that Defendant, exclusively of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.   If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

1

UNOFFICIAL DOCUMENT

Electronically Filed Martin Case # 16000404CAAXMX 04/08/2016 01:14:30 PM

## **IMPORTANT**

A lawsuit has been filed against you.   You have 20 calendar days after this Summons is served on you to file a written response to the attached Complaint in this Court.   A phone call will not protect you.   Your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.   If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court.   There are other legal requirements.   You may want to call an attorney right away.   If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a carbon copy or photocopy of your written response to the " Plaintiff/Plaintiff's Attorney" named above.

DATED on _____, 2016.


CAROLYN TIMMANN
CLERK OF COURT

(COURT SEAL)

By:_____
       Deputy Clerk

2

Filing # 40035649 E-Filed 04/08/2016 01:14:30 PM

# CIVIL COVER SHEET

## I.  CASE STYLE

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

RONALD MISSICK, II,                     CASE NO.:

      Plaintiff,                           JUDGE:

vs.

WHITEMARSH RESERVE
HOMEOWNERS ASSOCIATION, INC.,
a Florida Not for Profit Company.

      Defendant.

## II.  TYPE OF CASE

(If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ Condominium

☐ Contracts and indebtedness

☐ Eminent domain

☐ Auto negligence

☐ Negligence-other

  ☐ Business governance

  ☐ Business torts

  ☐ Environmental/Toxic tort

  ☐ Third party indemnification

  ☐ Construction defect

  ☐ Mass tort

  ☐ Negligent security

  ☐ Nursing home negligence

  ☐ Premises liability-commercial

  ☐ Premises liability-residential

☐ Products liability

☐ Real property/Mortgage foreclosure

☐ Commercial foreclosure
    $0 - $50,000

☐ Commercial foreclosure
    $50,001 - $249,999

☐ Commercial foreclosure
    $250,000 or more

☐ Homestead residential foreclosure
    $0 - $50,000

☐ Homestead residential foreclosure
    $50,001 - $249,999

☐ Homestead residential foreclosure
    $250,000 *or more*

☐ Nonhomestead residential foreclosure
    $0 - $50,000

☐ Nonhomestead residential foreclosure
    $50,001 - $249,999

☐ Nonhomestead residential foreclosure
    $250,000 or more

☐ Other real property actions
    $0 - $50,000

☐ Other real property actions
    $50,001 - $249,999

Electronically Filed Martin Case # 16000404CAAXMX 04/08/2016 01:14:30 PM

☐Other real property actions
☐Professional malpractice
    ☐Malpractice-business
    ☐Malpractice-medical
    ☐Malpractice -other professional
☐Other
    ☐Antitrust/Trade Regulation
    ☐Business Transactions
    ☐Constitutional challenge-
       statute or ordinance
    ☐Constitutional challenge-
       proposed amendment

$250,000 or more
☐Corporate trusts
[X] Discrimination-employment or other
☐Insurance claims
☐Intellectual property
☐Libel/Slander
☐Shareholder derivative action
☐securities litigation
☐Trade secrets
☐Trust litigation

## III. REMEDIES SOUGHT

[x] monetary
☐nonmonetary declaratory or injunctive relief
[x]punitive

## IV. NUMBER OF CAUSES OF ACTION:   [   2   ]
(specify)   (1) Racial Discrimination;
(2) Impermissible Policy/Disparate Impact

## V. IS THIS CASE A CLASS ACTION LAWSUIT?

☐  yes
[X]no

## VI. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED

[X] no
☐  yes .   If yes, list all related cases by name, case number and court.

_____

_____

## VII. IS JURY TRIAL DEMANDED IN COMPLAINT?

[X] yes
☐no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____   Fla Bar No.: 577421

Ryan S. Grazi, Esq.

Date: April 8, 2016

UNOFFICIAL DOCUMENT

*4/14/16 @ 1:58pm*

Filing # 40035649 E-Filed 04/08/2016 01:14:30 PM

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

RONALD MISSICK, II,                    CASE NO.: *16-404-CA*

        Plaintiff,                    JUDGE:

vs.

WHITEMARSH RESERVE
HOMEOWNERS ASSOCIATION, INC.,
a Florida Not for Profit Company.

        Defendant.

_____/

### SUMMONS

**STATE OF FLORIDA:**
**TO EACH SHERIFF OF THE STATE:**

    **YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint or Petition in this action on the Defendant:

        **WHITEMARSH RESERVE HOMEOWNERS**
        **ASSOCIATION, INC.**
        **c/o Registered Agent, Ross, Earle & Bonan**
        **789 South Federal Highway, Suite 101**
        **Stuart, FL 34994**

    Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, whose name and address is:

        Ryan S. Grazi, Esq.
        GRAZI & GIANINO, LLP
        Post Office Drawer 2846
        Stuart, Florida 34995

within twenty (20) days after service of this Summons on that Defendant, exclusively of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.   If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

1

Electronically Filed Martin Case # 16000404CAAXMX 04/08/2016 01:14:30 PM

## IMPORTANT

A lawsuit has been filed against you.   You have 20 calendar days after this Summons is served on you to file a written response to the attached Complaint in this Court.   A phone call will not protect you.   Your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.   If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court.   There are other legal requirements.   You may want to call an attorney right away.   If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a carbon copy or photocopy of your written response to the " Plaintiff/Plaintiff's Attorney" named above.

DATED on _____, 2016.

CAROLYN TIMMANN
CLERK OF COURT

(COURT SEAL)

By: _____
Deputy Clerk

2

Filing # 40509555 E-Filed 04/20/2016 02:40:45 PM

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

RONALD MISSICK, II,                    CASE NO.: 2016-CA-000404

         Plaintiff,

vs.

WHITEMARSH RESERVE
HOMEOWNERS ASSOCIATION, INC.,
a Florida Not for Profit Company.

         Defendant.

_____/

### NOTICE OF FILING AFFIDAVIT OF SERVICE

COMES NOW, the Plaintiff, RONALD MISSICK, II, by and through undersigned

counsel, and hereby gives notice that the Affidavit of Service and Summons of WHITEMARSH

RESERVE HOMEOWNERS ASSOCIATION, INC., have been filed with the Clerk of Court.

DATED this _20th_ day of April, 2016.

         GRAZI & GIANINO, LLP
         217 East Ocean Boulevard
         Stuart, FL 34995-2846
         Tel. (772) 286-0200
         Fax:  (772) 286-4789

         RYAN S. GRAZI, ESQ.
         Florida Bar No. 0577421
         Primary E-mail:  rgrazi@gglawyers.com
         2nd E-mail: lgrazi@gglawyers.com
         3rd E-mail: anasuarez@gglawyers.com

# AFFIDAVIT OF SERVICE

**State of Florida**                                        **County of Martin**                                        **Circuit Court**

Case Number: 16-404-CA

Plaintiff:
**RONALD MISSICK, II,**

vs.

Defendant:
**WHITEMARSH RESERVE HOMEOWNERS ASSOCIATION, INC., A FLORIDA NOT
FOR PROFIT COMPANY**

For:
Ryan Grazi
Grazi & Gianino, LLP
217 E. Ocean Blvd.
Stuart, FL 34994

Received by Jim Mosley Process Service on the 14th day of April, 2016 at 10:46 am to be served on **WHITEMARSH
RESERVE HOMEOWNERS ASSOCIATION, INC. C/O REGISTERED AGENT, ROSS EARLE & BONAN, 789 S FEERAL
HIGHWAY STE101, STUART, FL.**

I, Timothy Simmons, being duly sworn, depose and say that on the **14th day of April, 2016** at **1:58 pm, I:**

**CORPORATE:** served by delivering a true copy of the **SUMMONS, and VERIFIED COMPLAINT, and EXHIBIT'S A,B**
with the date and hour of service endorsed thereon by me, to: **Kathy King** as **Registered Agent** for **WHITEMARSH
RESERVE HOMEOWNERS ASSOCIATION, INC. C/O REGISTERED AGENT, ROSS EARLE & BONAN**, at the address
of: **789 S FEERAL HIGHWAY STE101, STUART, FL**, and informed said person of the contents therein, in compliance
with state statutes.

**Military Status:** Based upon inquiry of party served, Defendant is not in the military service of the United States of America.

I certify that I am over the age of 18, have no interest in the above action,  and am a Certified Process Server in good
standing in the judicial circuit in which the process was served. Under penalties of perjury, I declare that I have read the
forgoing Return of service/Affidavit of service and the facts stated in it are true. Pursuant to F.S. 92.525(2).

Subscribed and Sworn to before me on the 14th day
of April, 2016 by the affiant who is personally known
to me.

NOTARY PUBLIC

J. L. MOSLEY
Commission # FF 164026
Expires December 13, 2018
Bonded Thru Troy Fain Insurance 800-385-7019

**Timothy Simmons**
PS 09-41

**Jim Mosley Process Service
5100 Pinetree Dr.
Fort Pierce, FL 34982
(772) 464-6404**

Our Job Serial Number: JLM-2016001542

Copyright © 1992-2016 Database Services, Inc. - Process Server's Toolbox V7.1c